# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## ST. JOSEPH DIVISION

| | |
|---|---|
| DON FOSTER and VINCENT WILLIAMS, | ) )  ) |
| Plaintiffs, | ) ) ) |
| vs. | ) Case No. 05-06116-CV-SJ-GAF ) |
| MIDWEST SECURITY HOUSING, LLC, et al.,, | ) ) ) ) |
| Defendants. | ) |

## ORDER

Presently before the Court is a Motion to dismiss for failure to state a claim for which relief can be granted, filed pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)") by Defendants, Ronald and Pamela Huston (collectively "the Hustons") and Midwest Security Housing, LLC ("Midwest") (collectively "Defendants"). (Doc. #6). Plaintiffs, Don Foster ("Foster") and Vincent Williams ("Williams") (collectively "Plaintiffs"), oppose Defendants' Motion, arguing that Plaintiffs' complaint alleges facts which, when construed in the light most favorable to Plaintiffs, are sufficient to state a claim for which relief can be granted. (Doc. #8). For the reasons set forth below, Defendants' Motion to Dismiss is DENIED.

**DISCUSSION**

**I.     Facts**

This case arises from the death of inmate Rhonda Lynn Foster ("decedent"), which occurred while she was housed at Defendants' correctional facility, Midwest.[1] Midwest is a privately owned detention facility which provides detention services to Daviess County, Dekalb County, and other nearby counties in Missouri. Midwest is a for-profit business and is owned and operated by the Hustons. Decedent was incarcerated at Midwest under the jurisdiction of Dekalb County and by the terms of a contractual agreement between Dekalb County and Midwest.

Decedent was transferred to Midwest on August 30, 2005 for a probation violation. The following day, August 31, 2005, decedent, who was asthmatic, began to experience breathing difficulties and voiced her concerns to the guard on duty. The same day, decedent's husband, Foster[2], delivered inhalers to Midwest for decedent's asthma. However, despite decedent's continued complaints of breathing difficulty, staff at Midwest failed to immediately distribute the inhalers to decedent. Ultimately, the only nurse on duty, Myra Gaunt ("Gaunt"), distributed the medication. Gaunt is the only nurse on Midwest's staff. She works a regular shift and is the nurse on call when she is away. Gaunt is responsible for the health of approximately 200 inmates, both male and female.

Despite having received the inhalers, decedent continued to complain of breathing difficulty over the next three days. The staff at Midwest did not examine decedent during this time. On or about September 4, 2005, in addition to her continued breathing difficulty, decedent began experiencing acute

---

[1] These facts are derived entirely from the Plaintiffs' complaint except where otherwise noted.

[2] Plaintiff Williams is decedent's son.

abdominal pain and was unable to keep her food down. These conditions continued throughout the day, and decedent continued to complain to staff on duty regarding these symptoms. Decedent requested to see a nurse, and was told by guards on duty to file a Medical Service Report ("M.S.R."). Decedent filed an M.S.R. on September 4, 2005, reciting her health complaints. Midwest's policy regarding inmate medical complaints was that the M.S.R.s would first go to the Lieutenant or control room guard on duty, and the Lieutenant would then deliver the M.S.R.s to Gaunt the following morning. Decedent's M.S.R. was not viewed by Gaunt until September 5, 2005.

On September 5, 2005, Foster spoke with Debbie Huff ("Huff"), a staff member of Midwest and told her that he was concerned that the decedent may be experiencing problems associated with a ruptured appendix and gangrenous infection which had required a nine day hospitalization in June of 2005. However, Gaunt did not examine decedent on September 5, 2005. The decedent turned in a second M.S.R. on September 5, 2005, reciting the same health complaints. This M.S.R. did not reach Gaunt until September 6, 2005. Gaunt did not examine decedent on September 6, 2005.

Decedent turned in a third M.S.R. on September 6, 2005, which reached Gaunt on September 7, 2005. Gaunt did not examine decedent on September 7, 2005. On September 7, 2005, other inmates began to express their concerns to guards on duty that decedent needed medical attention. Cellmates of the decedent observed that the decedent, who weighed approximately 98 pounds, had such a swollen stomach that she appeared to be nearly six months pregnant. Decedent turned in a fourth M.S.R. on September 7, complaining of continuing or worsening abdominal pain, which reached Gaunt on September 8, 2005.

3

The guards who managed the cell, though rotating through shifts, witnessed the decedent's continued vomiting and complaints of abdominal pain during the time period between September 4, 2005 to September 8, 2005. These guards did not alert Gaunt that decedent's condition required immediate medical attention. On September 8, decedent exhibited additional symptoms, such as yellowish skin, bloodshot and swollen eyes, and an extremely swollen stomach. On September 8, Gaunt saw decedent just before noon. Inmates state that Gaunt did not physically examine the decedent at that time, but only took a cursory look at decedent without entering the cell. Reportedly, staff at Midwest contacted the Dekalb County Sheriff at approximately 2:00 p.m. on September 8, 2005, in order to get permission to transport decedent for medical attention. The Dekalb County Sheriff granted permission at this point in the day to transport decedent.

Throughout the day on September 8, 2005, decedent experienced bouts of vomiting. She was assisted by other inmates to the bathroom and, while en route to the bathroom, decedent's eyes rolled back in her head and she fell to the ground. At approximately 9:22 p.m. on September 8, 2005, five days after decedent filed her first M.S.R., and approximately seven hours after the Dekalb County Sheriff gave permission to transport decedent, staff at Midwest requested an ambulance to transport decedent for medical attention.

An ambulance arrived and transported decedent to Bethany Hospital. Decedent was subsequently flown to Liberty hospital by a Life Flight helicopter, where she was pronounced dead at approximately 12:30 a.m. on September 9, 2005. Although the autopsy report has not yet been finalized, the coroner informed decedent's family members that the suspected cause of death was a bacterial infection resulting from a bowel twist, ultimately depriving decedent of oxygen levels sufficient to sustain her life.

On October 14, 2005, Plaintiffs brought suit under the Missouri Wrongful Death Statute, Mo. Rev. Stat. § 537.090 [3] and under 42 U.S.C. § 1983 ("§ 1983"). Plaintiffs contend that the denial and delay of obviously necessary medical examination and treatment, and the failure to adequately assess decedent's condition by Midwest, acting by and through its staff, constituted deliberate indifference to the adequate and obvious medical needs of the decedent, thereby violating decedent's rights under § 1983. (Doc. #8). Plaintiffs argue that Midwest, as a private corporate entity, is liable under § 1983 because it acted under color of law and engaged in its own unconstitutional policies. Id. Plaintiffs also allege that the Hustons are liable under § 1983 because, as owners of Midwest, they failed to adequately supervise and train Midwest's staff. Id. Defendants argue that Plaintiffs' claims do not establish that Defendants failed to adequately hire, train, or supervise their employees, and there are no allegations that Defendants affirmatively adopted, approved, or authorized a specific policy that caused the decedent's death. Id.

## II. Legal Standard

A motion to dismiss is the proper method to test the legal sufficiency of the complaint. Schuer v. Rhodes, 416 U.S. 232, 236 (1974). Rule 12(b)(6) provides that a cause of action may be dismissed for the failure to state a claim upon which relief may be granted. When considering a motion to dismiss, the court treats all well pled facts as true and grants all reasonable inferences therefrom in favor of the non-moving party. Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). However, the court is not required to accept the pleader's own legal conclusions. Id. A motion to dismiss should only be

---

[3] Defendants do not argue for dismissal of Plaintiffs' wrongful death claim under Mo. Rev. Stat. § 537.090.

granted if it appears from the face of the complaint that the plaintiff cannot prove any set of facts to support his claims for relief. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).

**III.    Analysis**

   *A. Midwest*

   *Respondeat superior* liability is not a basis for liability under § 1983[4]. Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997) *citing* Kulow v. Nix, 28 F.3d 855, 858 (8th Cir. 1994). Nevertheless, a § 1983 cause of action can be maintained against a private corporate entity. *See* Dashley v. Correctional Medical Services, et al., 345 F.Supp.2d 1018, 1021 (E.D. Mo. 2004). To state a claim for which relief can be granted, the Plaintiffs must allege facts sufficient to show that Midwest was "acting under color of state law and engaging in its own unconstitutional policies." Id. *citing* West v. Atkins, 487 U.S. 42, 48 (1988).

   In this case, Midwest allegedly acted pursuant to a contract with Dekalb County to provide correctional services. Thus, its actions are properly characterized as "under color of state law" for purposes of § 1983. *See* Id. (private entity's delivery of medical treatment to inmate pursuant to a contract with Missouri Department of Corrections considered "under color of state law" for purposes of § 1983). A "policy" is defined by the Eighth Circuit as "a deliberate choice of a guiding principle or procedure made by...[an] official who has final authority regarding such matters." Id. *citing* Mettler v. Whitledge, 165 F.3d 1197, 1204, (8th Cir. 1999).

---

[4]The Court notes that Plaintiffs have not named Gaunt, Huff, or any of Midwest's guards as Defendants.

6

Case 5:05-cv-06116-GAF   Document 21   Filed 01/13/06   Page 6 of 11

Midwest argues that, even if Plaintiffs have alleged facts which support a finding that Midwest's *employees* acted with deliberate indifference to decedent's medical needs, Plaintiffs have not alleged facts sufficient to show that the deprivation of decedent's rights occurred pursuant to an unconstitutional policy promulgated by Midwest. (Doc. #11). Midwest argues that dismissal of the Plaintiffs' § 1983 claim is proper because Plaintiffs have put forth no allegations that Midwest affirmatively adopted, approved, or authorized a specific policy that caused the decedent's death. Id.

Plaintiffs put forth two affirmative allegations of a "policy" promulgated by Midwest. Plaintiffs allege that Midwest's policy for handling inmates' serious medical needs is defective in that M.S.R.s do not reach Gaunt until the day after they are filed, and Midwest has only one nurse on staff for approximately 200 inmates. The allegations that the decedent filed four M.S.R.s and waited almost five days before being briefly examined by Gaunt are sufficient to support the conclusion that Midwest's policy of delay in responding to M.S.R.s, as well as in employing only one nurse to handle all inmate medical care, played a critical role in the decedent's death.

More importantly, however, Plaintiffs complaint is rife with facts which support the inference that Plaintiffs' death resulted from the *complete lack of any policy* for ensuring that inmates' serious medical conditions are promptly attended to. Plaintiffs allege that the guards did not alert Gaunt of decedent's medical needs, but only informed the decedent that she should file more M.S.Rs. Foster allegedly called Midwest and alerted Huff of decedent's recent medical complications. After learning this information, the Plaintiffs claim that Huff did nothing to obtain medical treatment for decedent. Gaunt did not visit Plaintiff for almost five days after receiving her first M.S.R., and allegedly did not physically examine Plaintiff or even enter the cell.

7

Plaintiffs allege that, despite the obviousness of decedent's need for urgent medical care, Midwest's employees merely stood by for five days and watched as Plaintiff repeatedly vomited, complained of acute abdominal pain, deteriorated to the point of having yellow skin and a severely swollen abdomen, and ultimately died. These facts strongly support the inference that Midwest adopted a de facto "policy" of not having the necessary procedures and safeguards in place for handling inmates' urgent medical needs, and this policy caused the decedent's death. Plaintiffs have alleged facts which, when viewed in the light most favorable to the Plaintiffs, are sufficient to support a finding that Midwest's lack of a policy violated decedent's constitutional rights. Accordingly, because Plaintiffs have put forth facts which give rise to the inference that Midwest was acting under color of law and pursuant to its own unconstitutional policy, Plaintiffs have stated a viable § 1983 claim against Midwest.

    *B.    The Hustons*

Plaintiffs may also maintain a § 1983 cause of action against the Hustons as individual Defendants. Plaintiffs' claims against the Hustons arise not from their personal refusal to provide necessary medical treatment to the decedent, but from their alleged failure to adequately train and supervise the staff at Midwest.

Although *respondeat superior* liability is not a basis for liability under § 1983, government officials may be held liable under § 1983 for the constitutional violations engendered by their failure to adequately train or supervise their subordinates. Boswell v. County of Sherburne, 849 F.2d 1117, 1122 (8th Cir. 1988) *citing* Hahn v. McLey, 737 F.2d 771, 773 (8th Cir. 1984) (per curiam). Although the Hustons are not government officials, as owners of the private entity that is undertaking action fairly attributable to the

8

state, the Hustons are also properly characterized as acting "under color of state law" for purposes of § 1983. *See* Dashley, 345 F.Supp.2d at 1021.

This responsibility to train and supervise is premised on the notion that, under § 1983, the failure of an official to safeguard against constitutional transgressions by subordinates can constitute an actionable wrong in itself. Boswell, 849 F.2d at 1123. Plaintiffs need not demonstrate that the Hustons were personally involved in, or even knew about the failure to render medical care to decedent at the time it occurred. *See* Wever v. Lincoln County, Nebraska, 388 F.3d 601, 606 (8th Cir. 2004) *citing* Howard v. Adkison, 887 F.2d 134, 138 (8th Cir. 1989). Instead, the Hustons may be held liable under § 1983 if their failure to properly supervise and train Midwest's employees caused the alleged deprivation of Plaintiff's constitutional rights. *See* Id. This requires Plaintiffs to allege facts which demonstrate that the Hustons were deliberately indifferent to or tacitly authorized the offending acts. *See* Id. A showing of "deliberate indifference" or "tacit authorization" requires that the Hustons had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation. *See* Id.

In the instant case, Plaintiffs allege that the Hustons, as owners of Midwest, were responsible for training and supervising Midwest's employees, as well as for promulgating the policies followed by their subordinates. Plaintiffs contend that an absence of appropriate training and supervision resulted in the complete absence of medical care for the decedent, thus causing her death. After days of filing unanswered M.S.R.s, the Plaintiffs claim that the guards did not alert Gaunt to the decedent's condition, and instead told decedent to continue filing M.S.R.s. Plaintiffs further allege that, when Gaunt finally arrived to examine the decedent, she did not conduct a physical examination or even enter decedent's cell. Foster claims that he informed Huff about decedent's recent medical complications, and Huff did not act on the

9

information or convey it to the appropriate individuals.  Plaintiffs state that, even though Midwest staff received permission to transport decedent to the hospital at 2:00 p.m. on September 8, 2005, Midwest staff waited until decedent collapsed, seven hours later, to call for an ambulance.  Finally, Plaintiffs allege that the Hustons, as owners of Midwest, are personally responsible for the decision to have only one nurse on staff to care for 200 inmates.

The Plaintiffs' allegations of prolonged and deliberate inaction by Gaunt, Huff, and several guards are sufficient to indicate a widespread  lack of training, lack of supervision,  lack of adequate staffing, and lack of any reliable protocol for addressing inmate medical needs.  The Hustons, as owners of Midwest, are responsible for ensuring that Midwest is properly staffed and that employees are properly trained to handle inmates' urgent medical needs.  The allegation that the Hustons are directly responsible for promulgating training procedures is sufficient circumstantial evidence to give rise to the inference that the Hustons had the requisite notice that the lack of training procedures and supervision were likely to result in a constitutional violation  Accordingly, for purposes of surviving a Motion to Dismiss, Plaintiffs have succeeded in alleging facts which, when construed in the light most favorable to Plaintiffs, sufficiently allege that the Hustons' failure to properly supervise and train Midwest's employees caused the Plaintiff's death.

## CONCLUSION

Plaintiffs have stated a viable § 1983 claim against Midwest as a private corporate entity because Plaintiffs have put forth facts that Midwest was acting under color of law and pursuant to its own unconstitutional policy.  Because Plaintiffs have alleged facts which give rise to the inference that the Hustons' failure to train, supervise, and promulgate appropriate policies caused the decedent's death,

10

Case 5:05-cv-06116-GAF   Document 21   Filed 01/13/06   Page 10 of 11

Plaintiffs have also stated a viable § 1983 claim against the Hustons. Accordingly, Defendants' Motion to Dismiss is DENIED.

**IT IS SO ORDERED**.

       /s/ Gary A. Fenner
       GARY A. FENNER, JUDGE
        United States District Court

DATED:    January 13, 2006

11

Case 5:05-cv-06116-GAF   Document 21   Filed 01/13/06   Page 11 of 11